UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON TEXAS

United States District Court
Southern District of Texas
FILED

OCT 27 2008

Michael N. Milby, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | CRIMINAL NO. |
| CLARENCE LEWIS, III | § § | H-08-682 |

**INDICTMENT**

**COUNT ONE**
**(Conspiracy - Title 18, U.S.C. §1349)**

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

**UNSEALED**
**PER ARREST**
11/6/08

At all times material to this Indictment:

A. <u>Defendant</u>

1. CLARENCE LEWIS, III was a mortgage broker and operated his mortgage brokerage office under the name MOTOWN MORTGAGE GROUP. CLARENCE LEWIS, III employed loan officers and processors to assist him in acquiring clients interested in obtaining financing to purchase properties.

2. CLARENCE LEWIS, III was a real estate broker and operated a realty company under the name LEWIS & ASSOCIATES REALTORS. CLARENCE LEWIS, III frequently acted not only as the real estate broker on a real estate transaction but as the mortgage broker as well. CLARENCE LEWIS, III also acquired and used the business name ASTRO CONSTRUCTION CO. in connection with fraudulent real estate transactions.

B. <u>Residential Real Estate Closings</u>

1

3. The Transaction that is the subject of a residential real estate closing ("Closing") involves the purchase and sale of real property between two parties, the "Buyer" and the "Seller". The Buyer is an individual or entity who, in a "Cash Transaction," provides his own funds to pay 100% of the sales price, or, in a "Loan Transaction," obtains the funding from a lending institution (the "Lender"), to purchase the real estate, which has approved the Buyer/Borrower (hereinafter "Borrower") for a residential mortgage loan for up to 100% of the sales price. The Seller is an individual or entity who owns the property that is the subject of the transaction. Refinances of residential mortgage loans also involve a real estate closing though there is no Seller involved in the transaction.

4. The documents used to apply for a real estate mortgage loan are collected by loan officers and loan processors at the mortgage broker's office and transmitted to the Lender by United States mail and/or by commercial interstate carrier such as Federal Express and DHL Worldwide Express. These documents include, but are not limited to:

    a. The Uniform Residential Loan Application executed by the Borrower
    b. Borrower's credit report
    c. Verification of Employment
    d. Verification of Rent or Mortgage
    e. Lease agreements
    f. Verification of Deposit

5. The closing of the real estate transaction is conducted by a Title Company Escrow Agent or Closing Agent. The Title Company transmits documents prepared for the property closing to the Lender by facsimile as well as by United States mail and/or by

commercial interstate carrier such as Federal Express and DHL Worldwide Express. The Lender funds the residential loans through a wire transfer from the Lender's bank to the Title company's bank account. After the loans are funded, the Title Company disburses the loan proceeds.

C. <u>The Conspiracy</u>

6. From in or about January 2002 and continuing through, on or about January 16, 2007 in the Southern District of Texas, and elsewhere, the defendant,

CLARENCE LEWIS, III

did knowingly conspire and agree with at least one other person to commit the following offenses against the United States:

  a. To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used the United States mails and private and commercial interstate carriers for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341;

  b. To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used interstate wire communications facilities in carrying

out the scheme to defraud, in violation of Title 18, United States Code, Section 1343;

D. <u>Manner and Means of the Scheme</u>

It was a part of the conspiracy that:

7. CLARENCE LEWIS, III and his coconspirators and agents would and did locate real estate (the "Properties") in the Houston, Texas area.

8. CLARENCE LEWIS, III and his coconspirators and agents would and did recruit, solicit, compensate and cause to be compensated individuals with good credit to act as "Borrowers" in applications for residential mortgage loans to purchase one or more of the Properties.

9. CLARENCE LEWIS, III and his coconspirators and agents would and did act as the loan officer on refinances of properties previously purchased by individuals for the purpose of taking cash out of the transaction without the knowledge of the Lender.

10. CLARENCE LEWIS, III and his coconspirators and agents knew and intended that each Borrower would and did use and allow his or her name and other personal and financial information to be used and submitted to a "Lender" for the purpose of pretending and falsely representing that the Borrower was able to meet the financial obligations of the loan and had the incentive to do so.

11. CLARENCE LEWIS, III and his coconspirators and agents would and did cause to be completed Uniform Residential Loan Applications in the names of the

Borrowers in an attempt to obtain financing of the Property's sales price which applications included false representations including in certain instances the Borrower's plan to occupy the Property as their primary residence, a pretense and false representation that CLARENCE LEWIS, III and his coconspirators knew was material to the Lenders' decisions to grant and fund the loans.

12. CLARENCE LEWIS, III and his coconspirators and agents would and did prepare, authorize, disseminate, transmit and cause to be prepared, authorized, disseminated and transmitted through the United States mail and commercial interstate carriers and through interstate wire communications, to individuals and entities, including Lenders and their agents, false and fraudulent statements and other information, including but not limited to the ability and incentive of each Borrower to repay the loan, which the Defendants and their coconspirators knew and had reason to believe would be material to the Lender's decision to fund the mortgage loan and under what conditions.

13. CLARENCE LEWIS, III and his coconspirators and agents would and did cause the creation of property appraisals for various fraudulent real property transactions through an individual who falsely assumed the identity of a licensed appraiser. These falsified appraisals were forwarded to Lenders as evidence of the value of the property being purchased. CLARENCE LEWIS, III would and did pay the individual that assumed the identity of the licensed appraiser for purposes of the preparation and submission of the fraudulent appraisals to the Lenders.

14. CLARENCE LEWIS, III and his coconspirators and agents would and did cause the title company handling the closing of the residential real estate transaction to disburse fraudulently-induced loan proceeds from the escrow accounts of the title companies to various individuals and entities including LEWIS & ASSOCIATES REALTORS, MOTOWN MORTGAGE GROUP and ASTRO CONSTRUCTION CO.

15. CLARENCE LEWIS, III and his coconspirators and agents would and did cause bank accounts to be opened in the Houston, Texas area under various business names, including MOTOWN MORTGAGE GROUP, LEWIS & ASSOCIATES REALTORS and ASTRO CONSTRUCTION CO. for purposes including the deposit and transfer of proceeds of fraudulently-induced loans and to pay individuals who provided services necessary to promote and perpetuate the scheme

16. CLARENCE LEWIS, III and his coconspirators would and did induce Lenders to fund fraudulently obtained residential mortgage loans in the total amount of more than $12 Million Dollars ($ 12,000,000.00).

OVERT ACTS

In furtherance of the conspiracy described in Count One and to effect the objects thereof, the defendants named therein and other persons both known and unknown to the grand jury, performed or caused the performance of one or more of the following Overt Acts, among others not described herein, in the Southern District of Texas and elsewhere on or about the following dates:

**7102 Concho Mountain, Houston, Texas**

(1) July 24, 2003, CLARENCE LEWIS, III caused a Uniform Loan Application to be

signed for the purchase of 7102 Concho Mountain, Houston, Texas.

(2) August 1, 2003, CLARENCE LEWIS, III caused an appraisal report to be generated which valued 7102 Concho Mountain, Houston, Texas at $498,500.00.

(3) August 29, 2003, CLARENCE LEWIS, III caused an invoice from ASTRO CONSTRUCTION CO. in the amount of $40,000.00 to be sent by facsimile to Charter Title Company.

(4) August 29, 2003, CLARENCE LEWIS, III attended the real estate closing at Charter Title Company for the purchase of 7102 Concho Mountain, Houston, Texas.

(5) August 29, 2003, CLARENCE LEWIS, III caused the Borrower to sign an Occupancy Affidavit during the real estate closing transaction for 7102 Concho Mountain, Houston, Texas.

**7115 Sedona Hills, Houston, Texas**

(6) July 22, 2003, CLARENCE LEWIS, III caused a Uniform Residential Loan Application to be signed for the purchase of 7115 Sedona Hills, Houston, Texas for $495,000.

(7) August 1, 2003, CLARENCE LEWIS, III caused an appraisal report to be generated which valued 7115 Sedona Hills, Houston, Texas at $503,500.00.

(8) August 5, 2003, CLARENCE LEWIS, III caused a commission agreement to be signed concerning the contract to purchase 7115 Sedona Hills, Houston, Texas.

(9) August 21, 2003, CLARENCE LEWIS, III signed check 1297 drawn on the Washington Mutual Bank account of MOTOWN MORTGAGE GROUP to pay for

four appraisals.

(10)  September 29, 2003, CLARENCE LEWIS, III caused an ASTRO CONSTRUCTION CO. invoice for services to the Seller related to the installation of a pool for $35,000 to be sent by facsimile to Alamo Title Company.

(11)  September 29, 2003, CLARENCE LEWIS, III caused the Borrower to sign an occupancy agreement during the real estate closing transaction to purchase 7115 Sedona Hills, Houston, Texas.

(12)  September 30, 2003, CLARENCE LEWIS, III caused Alamo Title Company to wire transfer $35,000.00 in loan proceeds to the bank account of ASTRO CONSTRUCTION CO.

**16634 Lafone Drive, Spring, Texas**

(13)  September 4, 2003, CLARENCE LEWIS, III caused an appraisal report to be generated which valued 16634 Lafone Drive, Spring, Texas at $495,500.00.

(14)  September 4, 2003, CLARENCE LEWIS, III signed check 1320 drawn on the Washington Mutual Bank account of MOTOWN MORTGAGE GROUP to pay for property appraisals.

(15)  October 27, 2003, CLARENCE LEWIS, III caused the LEWIS & ASSOCIATES REALTORS New Home Contract for the property located at 16634 Lafone Drive, Spring, Texas to be executed.

(16)  October 29, 2003, CLARENCE LEWIS, III caused an Amendment to the LEWIS & ASSOCIATES REALTORS New Home Contract to be executed which stated ASTRO CONSTRUCTION CO. was to receive $100,030.51.

(17) November 14, 2003, CLARENCE LEWIS, III caused to be signed a Uniform Loan Application for the purchase of 16634 Lafone Drive, Spring, Texas which reflected the Borrower was employed by Rising Star Enterprises as a casting agent.

(18) November 18, 2003, CLARENCE LEWIS, III provided $5,000.00 to the Borrower to purchase a cashier's check payable to American Title Company in the amount of $5,000.00.

(19) November 18, 2003, CLARENCE LEWIS, III caused American Title Company of Houston to wire transfer $100,030.51 in loan proceeds to the bank account of ASTRO CONSTRUCTION CO.

**221 Blue Heron Dr., Montgomery, Texas**

(20) September 22, 2003, CLARENCE LEWIS, III caused to be signed a Uniform Residential Loan Application, Form 1003, stating that the Borrower was employed by Rising Star Enterprises as a casting agent.

(21) October 29, 2003, CLARENCE LEWIS, III caused a Department of the Treasury, Internal Revenue Service Form 1040 in the name of the Borrower, for tax years 2001 and 2002, to be sent to the Lender as loan documentation for the purchase of 221 Blue Heron Dr., Montgomery, Texas.

(22) December 16, 2003, CLARENCE LEWIS, III caused American Title Company of Houston to wire transfer $22,000.40 in loan proceeds to MOTOWN MORTGAGE GROUP.

(23) December 16, 2003, CLARENCE LEWIS, III caused American Title Company of

Houston to wire transfer $16,500 in loan proceeds to LEWIS & ASSOCIATES REALTORS.

(24) December 16, 2003, CLARENCE LEWIS, III caused the Seller to wire transfer $93,000.00 to the bank account of ASTRO CONSTRUCTION CO. at Washington Mutual Bank.

**16319 Cochet Spring Drive, Spring, Texas**

(25) May 17, 2004, CLARENCE LEWIS, III caused the Earnest Money Contract with a Swimming Pool Addendum to be sent by facsimile to the Lender.

(26) May 20, 2004, CLARENCE LEWIS, III caused Keith Wiltz to be paid for the appraisal on 16319 Cochet Spring Drive, Spring, Texas.

(27) May 23, 2004, CLARENCE LEWIS, III caused Bank One High Balance Checking bank statements in the name of the Borrower to be sent to the Lender.

(28) May 24, 2004, CLARENCE LEWIS, III caused a Uniform Residential Loan Application in the name of the Borrower to be sent by facsimile to the Lender.

(29) June 11, 2004, CLARENCE LEWIS, III caused an ASTRO CONSTRUCTION CO. invoice to the Seller for $43,975.15 to be provided to American Title Company of Houston.

(30) June 15, 2004, CLARENCE LEWIS, III caused American Title Company of Houston to wire transfer $44,358.30 to the Washington Mutual Bank account of ASTRO CONSTRUCTION CO.

**32342 Spinnaker Run, Magnolia, Texas**

(31) November 23, 2004, CLARENCE LEWIS, III caused to be signed a Real Estate Residential Sales Contract for the purchase of 32342 Spinnaker Run, Magnolia, Texas.

(32) November 30, 2004, CLARENCE LEWIS, III caused to be signed a Uniform Residential Loan Application, Form 1003, stating that the Borrower had a total gross monthly income of $18,400.

(33) December 23, 2004, CLARENCE LEWIS, III caused to be deposited into the Washington Mutual Bank account of ASTRO CONSTRUCTION CO. $32,887.15 in funds from the Sellers of 32342 Spinnaker Run, Magnolia, Texas.

(34) December 23, 2004, CLARENCE LEWIS, III withdrew $25,000 from the Washington Mutual Bank account of ASTRO CONSTRUCTION CO.

**WIRE FRAUD COUNTS**

### COUNTS TWO through FIVE
### (Title 18, U.S.C. §1343 and 2)

1. The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in sections A, B and D as set out in Count One of the indictment.

2. On or about the following dates in the Southern District of Texas, CLARENCE LEWIS III, aided and abetted by others known and unknown to the grand jury, did knowingly devise, intend to devise, and participate in a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses,

11

representations and promises, and for the purpose of executing the scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses and representations did cause to be transmitted in interstate commerce, by means of a wire communication, loan funds from the bank account of the Lender through the Federal Reserve Bank of New York into the bank account of the Title Company as follows in Counts Two through Five:

| COUNT | DATE | DEFENDANT | TRANSMISSION DESCRIPTION |
|---|---|---|---|
| Two | November 13, 2003 | CLARENCE LEWIS, III | Wire transfer of $401,257.42 from Fremont Investment and Loan to American Title Company of Houston for the purchase of 16634 Lafone Drive, Spring, Texas. |
| Three | December 12, 2003 | CLARENCE LEWIS, III | Wire transfer of $446,336.20 from First Franklin Financial Corp. to American Title Company of Houston for the purchase of 221 Blue Heron Dr., Montgomery, Texas. |
| Four | June 14, 2004 | CLARENCE LEWIS, III | Wire transfer of $501,901.42 from Fremont Investment and Loan to American Title Company of Houston for the purchase of 16319 Cochet Spring, Spring, Texas. |
| Five | December 23, 2004 | CLARENCE LEWIS, III | Wire transfer of $358,536.25 from MIT Lending to StarTex Title Company for the purchase of 32342 Spinnaker Run, Magnolia, Texas |

In violation of Title 18, United States Code, Sections 1343 and 2.

**MONEY LAUNDERING COUNTS**

### COUNT SIX
### (Title 18, U.S.C. §1956(h))

A. The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in sections A and C as set out in Count One of the indictment.

B. From in or about January 2002 to on or about January 16, 2007, in the Southern District of Texas, and elsewhere, and within the jurisdiction of this Court

CLARENCE LEWIS, III

defendant herein, did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to the grand jury, to commit the following offenses against the United States in violation of Title 18, United States Code, Section 1956 and 1957, to wit:

1. To knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce which involved the proceeds of a specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, 1343 and mail fraud, Title 18, United States Code, Section 1341, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds and monetary instruments represented the proceeds of

some form of unlawful activity, in violation of Title 18, United States Code, Section 1956 (a)(1)(A)(i).

2. To knowingly and willfully conduct and attempt to conduct a financial transaction, the activities of which affect interstate commerce with the proceeds of a specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, Section 1343 and mail fraud, a violation of Title 18, United States Code, Section 1341, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds and monetary instruments represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

3. To knowingly engage in and attempt to engage in monetary transactions within the United States in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, that is, wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS SEVEN
(Title 18, U.S.C. § 1957(a))

1.  The Grand Jury realleges and incorporates by reference, as though set forth in full herein, the allegations set forth in Sections A, B and D of Count One of this Indictment.

2.  On or about November 18, 2003, in the Southern District of Texas and elsewhere, the defendant,

CLARENCE LEWIS, III

did knowingly engage in, and attempt to engage in, a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, that is, the withdrawal of $45,456.00 from the Washington Mutual bank account of ASTRO CONSTRUCTION CO to purchase official check 967132405 in the amount of $45,456.00 payable to LandRover Houston, such funds having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1957(a) and 2.

## **NOTICE OF FORFEITURE**

**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))**

Pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C) the United States gives the defendant

CLARENCE LEWIS, III

notice that in the event of conviction, all property which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections 1341 and 1343, or a conspiracy to commit such offenses, as charged in Counts One through Five of the

Indictment, shall be forfeited to the United States. The property subject to forfeiture includes, but is not limited to, the following property:

Count One    $ 12,000,000.00
Count Two    $      401,257.42
Count Three  $      446,336.20
Count Four   $      501,901.42
Count Five   $      358,536.25

or a money judgment equal to the amounts of money listed above. Further, a defendant may be jointly and severally liable to the United States with any co-conspirator convicted of a common Count.

## NOTICE OF FORFEITURE
(18 U.S.C. § 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives the defendant

CLARENCE LEWIS, III

notice that in the event of conviction, all property involved in a violation of Title 18, United States Code, Section 1957, or a conspiracy to commit such an offense, as charged in Counts Six and Seven of the Indictment, and all property traceable to such property, shall be forfeited to the United States. The property subject to forfeiture includes, but is not limited to, the following property:

Count Six      $12,000,000.00
Count Seven    $       45,456.00

16

or a money judgment equal to the amounts of money listed above. Further, a defendant may be jointly and severally liable to the United States with any co-coconspirators convicted of a common Count.

### Substitute Assets

In the event that the property subject to forfeiture as a result of any act or omission of the defendant:

- a. cannot be located upon exercise of due diligence;
- b. has been placed beyond the jurisdiction of the Court;
- c. has been transferred or sold to, or deposited with a third party;
- d. has been substantially diminished in value; or
- e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE

DONALD J. DeGABRIELLE, JR.
United States Attorney

By: *[signature]*
Melissa J. Annis
Assistant United States Attorney